activities. As a resolution to her grievance, Lange requested: (1) back pay at the GS-9 level, (2) compensation for leave taken due to her emotional distress, and (3) medical expenses. A review of Lange's December 20th grievance indicates she elected to proceed with the negotiated grievance procedure. By making this election, Lange forfeited her right to pursue an EEO claim.

Having found that Lange elected to proceed under the negotiated grievance procedure, the Court turns to the issue of whether Lange properly exhausted her administrative remedies before filing suit. "It is well-settled that exhaustion of administrative remedies is a jurisdictional prerequisite to a private civil action under Title VII." *Martell v. Norton*, 242 F. Supp.2d 652, 657 (N.D. 2003). The agreement negotiated between Lange's union and the Forest Service contained a three-step grievance procedure. The first step requires the filing of a formal grievance with the immediate supervisor. If the grievance is denied at the first level, the employee can proceed to the second step which entails forwarding the grievance to the next level supervisor. Finally, if the grievance is denied at the second step, the employee can proceed to the third step and forward her grievance to the Regional Forester. The agreement further provides that if the matter is not resolved at the third step it may be referred to arbitration.

In this case, Lange followed the first stage of the grievance procedure by filing her December 20th grievance with her supervisor, Richard Judge. Mr. Judge denied Lange's grievance on January 18, 2001, and advised Lange that she had the right to file a step two grievance with the Forest Supervisor. Lange failed to appeal the denial and take her grievance to the second level. Thus, Lange failed to exhaust her administrative remedies under the negotiated grievance procedure.

## II. Is Lange's Failure to Exhaust Her Administrative Remedies Excusable?

Lange argues that even if she failed to exhaust her administrative remedies, the Court should excuse her failure on the grounds that the Forest Service should be equitably estopped from asserting her failure to exhaust. Lange relies upon management's alleged unfulfilled obligation to supply a workload analysis and its contradictory position (removing Lange's COR duties when COR opportunities were available).

The doctrine of equitable estoppel focuses on actions taken by a defendant in preventing a plaintiff from filing suit. For the doctrine of equitable estoppel to apply in this instance, the following elements must be satisfied: (1) the government must have known the facts, (2) the government must have intended that its conduct will be acted on, (3) Lange must have been ignorant of the true facts, (4) Lange must have detrimentally relied upon the government's conduct, and (5) the government must have engaged in "affirmative conduct going beyond mere negligence," and (6) the public interest must not suffer undue damage as a result of the application of this doctrine. *Lehman v. United States*, 154 F.3d 1010, 1016-17 (9th Cir. 1998).

Under the circumstances of this case, the Court deems it inappropriate to invoke the doctrine of equitable estoppel. Even taking all of the allegations made by Lange as true, they do not rise to the level of affirmative misconduct by the government. Furthermore, given that Lange was clearly advised that her COR duties would be removed, it is hard for the Court to see what exactly Lange relied upon to her detriment. Lange's failure to exhaust her administrative remedies is not excusable. Therefore, summary judgment in favor of the government is proper regarding Lange's claims of improper denial of promotion and of reprisal based on union activity.

## III. Did Lange Exhaust Her Administrative Remedies Regarding Her Retaliation Claim?

The government also seeks summary judgment on Lange's retaliation claim, again under the theory that she failed to exhaust her administrative remedies. Lange's retaliation claim is based upon comments made by her supervisor, Jim Mickelson, in February of 2000 regarding Lange's participation in union activities. The conduct and comments alleged to have been made by Mickelson were specifically raised in Lange's September 29, 2000 grievance. Furthermore, in Lange's December 20, 2000 grievance, she makes reference to her belief that her union activities impacted management's decision to remove her COR duties, and requested as relief, among other things, that she never be supervised by either Mr. Judge or Mr. Mickelson. As mentioned above, Lange failed to pursue either of her grievances beyond the first level. Thus, under the same analysis as enumerated above, the Court finds that Lange failed to exhaust her administrative remedies under the negotiated grievance process regarding her retaliation claim. This failure will not be excused, and summary judgment in favor of the government is therefore proper.

## IV. Did Lange Exhaust Her Administrative Remedies Regarding Her Hostile Work Environment Claim?

The government seeks summary judgment on Lange's hostile work environment claim on the basis that she completely failed to raise this issue in her EEO complaint. Lange responds by contending that this claim is "like or reasonably related" to the allegations made in her EEO complaint. A review of her EEO complaint proves otherwise.

Lange, for her EEO complaint, defined the issue as "whether [she] was subjected to discrimination based on sex (female), reprisal, and in violation of the Equal Pay Act, when on April 27, 2001, the agency failed to reclassify her position and promote her to the GS-9 level."

Clearly, the issue as framed by Lange does not address or even implicate a hostile work environment claim. As a result, the USDA's Office of Civil Rights, in making its final agency decision, did not address any hostile workplace environment issues. Once again, Lange has failed to exhaust her administrative remedies, resulting in summary judgment in favor of the government on this issue.

## V. IS LANGE'S EQUAL PAY ACT CLAIM BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS?

The statute of limitations for Lange's Equal Pay Act claim is two years unless the violation is deemed to be willful, in which case it is three years. *See* 29 U.S.C. § 255, 29 C.F.R. § 1614.408. Lange is seeking back pay for work which she performed as early as 1998. As discussed above, her COR duties were removed as of November 2000. Her complaint was filed on July 24, 2003.

Lange responds by arguing the continuing violations doctrine applies in Equal Pay cases, meaning that an action will not be time-barred so long as one forbidden act falls within the limitations period. *See, e.g. Gandy v. Sullivan County*, 24 F.3d 861, 864 (6th Cir. 1994); *Cherrey v. Thompson Steel Co., Inc.*, 805 F. Supp. 1257, 1261 (D. Md. 1992) (sound equitable reasons exist for the tolling of the limitations period while awaiting EEO determination). Lange is correct in her position. The continuing violations doctrine and the fact that Lange filed an EEO complaint in 2001 both provide the Court with a basis to toll the statute of limitations. Accordingly, summary judgment is not proper regarding this issue.

The government contends in the alternative that even if Lange's claim is not time barred, her damages should be limited to the loss of pay between July 24, 2000 and November 5, 2000.

The Court will address the issue of the allowable computation of damages prior to trial.

## CONCLUSION

For the reasons as enumerated above, the government's motion for summary judgment (*Docket No. 21*) is **GRANTED** as to Lange's discrimination claims (Counts I and II) and **DENIED** as to all other claims.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 26th Day of January, 2005.

RICHARD F. CEBULL
U. S. DISTRICT JUDGE

CERTIFICATE OF MAILING
DATE: 1/26/05 BY: Jn
I hereby certify that a copy of this order was mailed to:
Tim Caven
Gregory Black

# Memorandum

| Subject: | Date: |
|---|---|
| ***Teresa Kim Lange v. United States***<br>Cause No. CV 03-61-BU-RFC | January 26, 2006<br>2003V00191<br>TJC/lat |
| To:<br>Donna Steffensen<br>Supervisory Human Resource Specialist<br>U.S. Forest Service<br>P.O. Box 7669<br>Missoula, MT 59807 | From:<br>Timothy J. Cavan<br>Assistant U. S. Attorney<br>P.O. Box 1478<br>Billings, MT 59103<br>Telephone: (406) 247-4674<br>Fax: (406) 657-6989 |

Enclosed please find copies of the following:

ORDER TRANSFERRING CASE TO THE UNITED STATES COURT OF FEDERAL CLAIMS, filed January 18, 2006.

Enclosures

cc: Mark Lodine, Esq.
Office of General Counsel
Department of Agriculture
P.O. Box 7669
Missoula, MT 59807
Telephone: (406) 329-3066
Fax: (406) 329-3064

RECEIVED
JAN 19 2006
U.S. ATTORNEY'S OFFICE
BILLINGS, MONTANA

FILED
BILLINGS, MT
2006 JAN 18 PM 3 27
PATRICK E. DUFFY, CLERK
BY
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| **TERESA KIM LANGE,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ANN M. VENEMAN, SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE,**<br><br>**Defendants.** | **CV-03-61-BU-RFC**<br><br>**ORDER TRANSFERRING CASE TO THE UNITED STATES COURT OF FEDERAL CLAIMS** |

On July 24, 2003 Plaintiff Teresa Kim Lange filed an employment discrimination suit against her employer, the United States Forest Service ("USFS"). Defendants were subsequently granted summary judgment on Counts I and II, but denied summary judgment on Count III. On December 12, 2005, this Court granted Defendants' Motion for Leave to File a Motion to Dismiss Beyond the Court's Motion Deadline. Presently before the Court is Defendants' Motion to Dismiss or Transfer to the Federal Court of Claims.

The only remaining count of Plaintiff's Complaint is Count III, which is based on the Equal Pay Act. The "Big" Tucker Act and the "Little" Tucker Act contain jurisdictional rules for suits against the United States brought under federal statutes. The "Little" Tucker Act provides concurrent jurisdiction to the United States Court of Federal Claims and the United States District Court over claims founded on federal statutes that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). The "Big" Tucker Act grants the United States Court of Federal Claims jurisdiction

Case 2:03-cv-00061-RFC Document 62 Filed 01/18/2006 Page 2 of 2

over "any claim against the United States founded" upon federal law. 28 U.S.C. § 1491(a)(1). Federal Courts have repeatedly construed these statutes as granting the United States Court of Claims exclusive jurisdiction over Equal Pay Act claims exceeding $10,000. *E.g., Schrader v. Tomlinson,* 311 F.Supp.2d 21, 26 (D. D.C. 2004); *Barnes v. Levitt,* 118 F.3d 404, 410 (5th Cir. 1997); and *Huddleston v. Donovan,* 524 F.Supp. 179, 180 (N.D. Ill. 1981). Plaintiff apparently does not dispute the fact that her claim exceeds $10,000, as she has requested that her Equal Pay Act claim be transferred to the Court of Federal Claims rather than having it dismissed. *Plaintiff's Response to Defendants' Motion to Dismiss or Transfer,* page 3 (September 16, 2005).

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Transfer to the Federal Court of Claims (*Doc. #59*) is **GRANTED**. This case is transferred to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631.

The Clerk is directed to notify the parties of the making of this Order.

DATED this 18th day of January, 2006.

RICHARD F. CEBULL
U.S. DISTRICT JUDGE

CERTIFICATE OF MAILING
DATE 1/18/06 BY: ____
I hereby certify that a copy of this Order was mailed to:
Greg Black
Tim Cavan

11236 R1

7/29/09 Clyn GR

USDA

## United States Department of Agriculture
## Office of Civil Rights

United States Department of Agriculture

Office of the Assistant Secretary for Civil Rights

Office of Civil Rights

1400 Independence Avenue SW

Washington, DC 20250

Teresa K. Lange,
Complainant,

v.

Ann M. Veneman,
Secretary,
Department of Agriculture,
Agency.

USDA Complaint No. 010630

COPY FOR YOUR INFORMATION

## Final Agency Decision

### Introduction

In a request dated July 19, 2002, the Complainant requested that the Agency issue a Final Agency Decision (FAD) on the record. In accordance with the Equal Employment Opportunity Commission (EEOC) Regulations at 29 C.F.R. §1614.110(b), this is the final decision of the Department of Agriculture (USDA) on this complaint.

### Issue Presented

The issue presented herein is whether the Agency subjected the Complainant to discrimination based on sex (female), reprisal, and in violation of the Equal Pay Act (EPA) of 1962, when allegedly on April 27, 2001, she was told that she would not be promoted to the GS-9 level because she did not perform Contract Officer Representative (COR) duties year round.

### Procedural Background

The record reflects that the Complainant sought equal employment opportunity (EEO) counseling on May 8, 2001. EEO counseling was conducted, and the Complainant was issued a Notice of Right to file a formal complaint on June 15, 2001. The Complainant filed a formal complaint on July 2, 2001. The Agency acknowledged receipt of the formal complaint on July 16, 2001.

On October 30, 2001, the Agency notified the Complainant that it was accepting all but one (1) of the issues raised in her formal complaint filed July 2, 2001. Specifically, the Agency dismissed the issue arising from the Complainant's allegation that she was not promoted pursuant to a classification decision made on October 3, 2000, determining that she had failed to initiate timely contact with the EEO Counselor as required by 29 C.F.R. §1614.105 (a). In a letter dated November 9, 2001, the Complainant, through her representative, conveyed her disagreement with the dismissal. In a letter dated November 30, 2001, the Agency notified the Complainant's representative that it had dismissed the issue in error, was accepting the issue, and would refer it for investigation.

The investigation on both accepted issues was completed on January 18, 2002. The Record of Investigation (ROI) was forwarded to the Complainant. The Complainant requested that the Agency issue its FAD on the record. Therefore, the Agency is issuing the instant FAD.

**Factual Background**

The record reflects that at all relevant times, the Complainant (female, prior EEO activity) was an Engineering Technician, GS-802-7, with the Forest Service, Region 1, Beverhead-Deerlodge, located in Butte, Montana. The Complainant named the Forest Supervisor (female, no prior EEO activity) as the discriminating Agency official.

Complainant's Contentions

The Complainant alleged that in addition to her duties as an Engineering Technician, she had been performing the duties of a COR until October 19, 2000, when she was notified of management's decision to redistribute the COR/ER duties. She said that management made the decision as a result of the Agency personnel officer's determination that she was working at the Engineering Technician, GS-9, level when she performed COR/ER duties. She stated further that the Personnel Officer advised Agency management that it should either reclassify the Complainant's position to that of a GS-9, Engineering Technician, or redistribute the COR/ER duties to a GS-9, Engineering Technician. She stated that on October 19, 2000, management notified her that it was redistributing the COR/ER duties to a GS-9, Engineering Technician. The Complainant argued that the Agency decision not to reclassify her position to the GS-9 level constitutes illegal discrimination. She contended that the Agency has non-competitively promoted male employees to higher-graded positions.

Management's Contentions

The Assistant Forest Engineer (AFE) (male, no prior EEO activity), GS-810-12, denied discriminating against the Complainant. The AFE recounted that in late 1999, he temporarily promoted the Complainant from the GS-802-7 to GS-802-9 when she was assigned the COR/ER duties of a female GS-802-9, her first-level supervisor, who was absent on a detail assignment.

He further stated that that temporary appointment was not to exceed November 4, 2000. He testified that when the female GS-802-9 returned to the office, she reassumed her COR duties and because the workload levels and funding concerns would not support two (2) GS-802-9s, the Complainant's temporary COR duties were redistributed to a GS-802-9 Engineering Technician.

The Complainant's fourth-line supervisor, Forest Supervisor, GS-340-15 (female, no prior EEO activity) denied that the Agency discriminated against her. She stated that the Agency's decision to redistribute the COR/ER duties rather than upgrade the Complainant's position was based on budgetary concerns.

Complainant's Rebuttal.

In her rebuttal, the Complainant argued that management's given reasons for the decision not to upgrade her position were pretextual. She contended that a workload analysis was never completed, so management's given reason for its refusal to promote her non-competitively was without substance. She also claimed that the Agency's budget was not at issue, since the Agency was considering filling a Professional Engineer position in the 810 Series.

**Analysis and Findings**

In the absence of direct evidence of discrimination, to prevail on a claim of unlawful discrimination under Title VII, a complainant must satisfy the three (3) part evidentiary scheme in McDonnel Douglas Corporation v. Green, 411 U.S. 792 (1973). A complainant must initially establish, by preponderant evidence, a prima facie case of discrimination. The prima facie elements are determined by the circumstances of the case and the bases of discrimination alleged. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 (1977). The Agency must then articulate legitimate nondiscriminatory reasons for its actions. Finally, the burden returns to the Complainant to prove by a preponderance of evidence, that the Agency's ostensibly legitimate nondiscriminatory reasons are pretextual. Cooper v. Federal Reserve Bank of Governors v. Aikens, 460 U.S. 711, 715-6 (1983); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-6 (1981).

At all times, the ultimate burden of persuasion remains with the Complainant. Board of Trustees of Keene College v. Sweeny, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1973). In Hicks, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

To establish a prima facie case based on reprisal, a complainant must show that: (1) he/she engaged in prior protected activity; (2) the Agency official was aware of the protected activity; (3) he/she was substantially disadvantaged by the adverse action; and (4) there is a causal link between the protected activity and adverse action. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1980). In addition, in Gunther v. County of Washington, 623 F.2d 1303, 1316 (9th Cir. 1979), aff'd 452 U.S. 161 (1981), the court held that essential to the link between protected activity and adverse action is showing that the official(s) took the action at issue because of complainant's prior protected activity and sought to deter the complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), pp. 8-16.

Here, we are not persuaded that management's actions were motivated by discrimination for any reason.

**Agency Merit Findings**

Complainant's Title VII-related Claims

The Complainant has failed to establish a prima facie case of reprisal. There is no indication that the Complainant had previously engaged in protected EEO activity prior to the filing of the instant complaint. We reach this decision based on the Complainant's affidavit in which she stated "I believe reprisal is a factor because of my participation and interaction with the union concerning this complaint and other issues." She describes a meeting that she had with Agency management in which she raised the issue about employees performing COR/ER duties outside of their grade level positions. It appears that this meeting took place after the Agency notified her of its decision not to upgrade her position, and represented an informal attempt to mediate the issue. However, the Complainant makes clear that she was raising this issue in her role as a union representative and as part of a grievance proceeding, and not as any proceeding related to the assertion of civil rights. An informal mediation session, without more, does not convert the informal grievance into protected EEO activity. Moreover, nothing in the record indicates that any issue of alleged disparity in treatment between males and females was raised at the session. Therefore, the Complainant has failed to satisfy element one of a prima facie case of reprisal. Furthermore, the Complainant does not allege, nor is there

anything in the record to support a finding that Agency management viewed her activity as EEO-related activity. Therefore, the Complainant has failed to satisfy ~~element two~~ (2). Even if we could find that the Complainant satisfied element three (3), she has not presented sufficient evidence that will permit us to infer a link between the actions complained of and any actions that could reasonably be construed as EEO-related activities. We find no reprisal motive in Agency management's actions here. There is absolutely no evidence that would support a finding that the Agency engaged in the cited actions for the purpose of deterring the Complainant or her co-workers from voicing their concerns about alleged pay inequities between male and female employees or from exercising their civil rights in the workplace. Accordingly, we find that the Complainant has failed to make a case of reprisal discrimination

We also find that the Complainant has failed to satisfy the elements of a prima facie case of sex discrimination based on disparate treatment. In her affidavit, the Complainant identifies two (2) male employees who she claimed were promoted non-competitively to higher grade levels. According to the Complainant, in one instance, a male applied for a position advertised as at GS-7/9, Engineering Technician level, entered at the GS-7 level, and was non-competitively promoted to a GS-9 level as a result of obtaining his COR certification. In the other instance, a male applied for a position as a GS-5/7, Engineering Technician, entered at the GS-5 level, and was subsequently promoted non-competitively to GS-7 level through an accretion of duties. The issue here is whether a male employee, who was similarly situated to the female Complainant, was treated differently with regard to the Agency's decision to redistribute COR/ER duties rather than reclassify a GS-7, Engineering Technician, position to that of a GS-9. We find no evidence of disparate treatment. The Complainant has presented no evidence that suggests that a male employee was treated differently in this regard. In other words, the Complainant has made no showing that the male GS-5, Engineering Technician, was promoted non-competitively to the GS-7 level based on his assumption of COR/ER duties. Similarly, the Complainant has not shown that the GS-9 male Engineering Technician attained that grade level based on his assumption of COR duties. Rather, she acknowledged that he attained his GS-9 level as a result of satisfying an advertised condition of employment under which he could be non-competitively promoted to a GS-9 if he obtained COR certification. In contrast, there is no evidence that the Complainant accepted her GS-7 level position under the same terms and conditions.

Even if the Complainant had successfully established a prima facie case of reprisal or sex discrimination, considering the evidence herein, we find that the Agency has articulated legitimate nondiscriminatory reasons for its actions. Responding managers explained that Agency management made the decision not to upgrade the Complainant's position based on budgetary concerns and workload assessments. The fact that the Agency may have been considering posting a vacancy for a professional engineer position or chose not to conduct

a formal workload analysis before deciding not to reclassify does not support a finding that the Agency harbored a pretext motive. The weight of the evidence does not demonstrate that the Agency's proffered reasons are pretext for illegal discrimination. Hence, no finding of reprisal or sex discrimination concerning the Agency's refusal to reclassify is warranted.

Complainant's EPA Based Claim

Regarding the Complainant's EPA based claim, the EPA of 1963, as amended, 29 U.S.C. 206 (d) prohibits sex-based wage discrimination between employees by paying wages to employees of one gender at a rate less than the rate paid to employees of the opposite gender for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. The EPA was enacted to remedy the "serious and endemic" problem of sex-based wage discrimination. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). It stands for the straightforward proposition that "employees doing equal work should be paid equal wages, regardless of sex." Goodrich v. International Brotherhood of Electrical Workers, 815 F.2d 1519, 1523 (D.C. Cir. 1987), citing H.R. Rep. No. 309, 88th Cong., 1st Sess. 2 (1963), U.S. Code Cong. & Admin. News 1963, pp. 687, 688.

The concept of "equal pay for equal work" is not to be confused with the concept of "comparable worth." The EPA does not require sex-neutral compensation based on the intrinsic worth of a job to an employer (e.g., trying to compare the worth of a secretary to that of a truck driver). The term "employer" includes the Federal Government. Id. at 203(d), (e)(2), and (x) (1978). The United States Supreme Court articulated the requirements for establishing a prima facie case of discrimination under the EPA in Corning Glass Works, 417 U.S. at 195. A complainant has the initial burden of establishing a prima facie case under the EPA. In order to establish a prima facie case, the complainant must show that he/she: (1) receives lower pay than a co-employee of a different gender; and (2) performs work substantially equal in skill, effort, and responsibility under similar working conditions as the co-employee. "Substantially" means "closely related" or "very much alike." Skill usually involves factors such as experience, training, education, and ability. Effort usually refers to the amount of physical or mental exertion required to perform the job. Responsibility usually covers the degree of accountability required, including the importance of the job obligation.

A complainant need not show intent to discriminate in proving a prima facie violation of the EPA. Brewster v. Barnes, 788 F.2d 985, 993, n. 13 (4th Cir. 1986); Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986); Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1260, n. 5 (7th Cir. 1985); Sinclair v. Automobile Club of Oklahoma, Inc., 733 F.2d 726, 729 (10th Cir. 1984); EEOC Compl. Manual Section 704.2. Courts frequently do not break their EPA analyses down into separate comparisons of skill, effort, and responsibility. B. Schlei & P. Grossman, Employment Discrimination Law, p. 449 (2d ed.). The primary approach in determining the equality of jobs is an analysis of overall job content. Angelo v. Bacharach Instrument Co., 555 F.2d at 1173; Edmondson v. Simon, 497 F. Supp. 411, 413 (N.D. Ill. 1980). Courts have looked to whether the jobs share "a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." Fallon v. Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989); Brewster v. Barnes, 788 F.2d at 991; EEOC v. Shelby County Government, 707 F. Supp. 969 (W.D. Tenn. 1988). It is actual job content and job requirements, not necessarily the job description, that is controlling in determining whether jobs are substantially equal. Epstein v. Secretary of the Treasury, 739 F.2d 274 (7th Cir. 1984); Orahood, 645 F.2d at 654; 29 C.F.R. 1620.13(e).

The burden is on the employee to identify a particular co-employee of a different gender (i.e., a "comparator") for purposes of the inquiry. It is not sufficient to compare oneself to a hypothetical or "composite" comparator.

If a complainant establishes a prima facie case, the burden then shifts to the employer to prove, by a preponderance of the evidence, that the pay differential is justified by the existence of one or more of the four (4) statutory exceptions that permit salary differences: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) a differential based on "any factor other than sex." As this is an affirmative defense, the employer must prove it by a preponderance of the evidence. If the employer proves the affirmative defense, the complainant's claim fails, unless the complainant can persuasively rebut the employer's evidence regarding the above factors.

Salary differentials that stem from unequal starting salaries do not violate the EPA if the employer can show that the original disparity was justified by a legitimate factor other than sex. The Supreme Court has held that a "bona fide job classification system" is a "factor other than sex," and, therefore, differences resulting there from are exempt under exception (4), so long as the system is applied in a gender-neutral manner.

In an EPA case, the focus is not on job descriptions or titles but job requirements and performance. In addition, an Agency does not carry its burden of showing that a wage differential is legitimate merely by citing to desks audits that conclude the positions at issue are properly classified. Adams v. Secretary of Veterans Affairs, 01992806 (2000). In Adams, the administrative judge analyzed the claim under Title VII, having found that complainant had not asserted a claim under the EPA. On appeal, the Commission considered the complainant's claim of gender-based pay discrimination under the standards set forth in the EPA, citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) and Arnold v. Secretary of Treasury, 01960490 (1998). In Adams the Commission found:

> The Commission initially agrees with the AJ's finding that complainant demonstrated that she was discriminated against on the basis of her gender when she was paid a GS-101-09 salary while performing duties substantially similar to those of male Addiction Therapists paid at the GS-101-11 level. In addition, although the agency maintained that complainant was graded at the GS-101-09 level due to an internal classification system and confirmed by agency desk audits, we find that the agency failed to meet its burden under the EPA in establishing a valid affirmative defense to the presumption of gender-based wage discrimination. As the AJ noted, a job classification system is not a defense to a prima facie case of gender-based wage discrimination if an investigation shows that it does not accurately reflect the actual duties performed by individuals in the different classifications. We find that a review of the record supports the AJ's conclusion that complainant was performing substantially equal work as were the comparative male Addiction Therapists who were graded at the GS-101-11 level. The AJ noted that the difference in their work was minimal despite the agency's classification system, and the alleged differences listed by the agency are at odds with the desk audits. As the record reflects that complainant and her male comparators were performing substantially equal work, the fact that the agency performed three desk audits and each time concluded that complainant was properly graded does not carry the agency's burden."

Therefore, even if a desk audit had been conducted in this case, the results would not have disposed of the issue of whether the Complainant and her male co-workers were performing "substantially equal work."

The Complainant has identified a male co-worker, a GS-9, Engineering Technician, as a comparator for the purposes of the EPA inquiry. However, the Complainant has failed to establish a prima facie case because she has made no showing that she was performing "equal work" to that of the male comparator. She herself established in her affidavit that after the personnel officer notified management of its classification decision, management redistributed her temporary COR duties to a GS-9, Engineering Technician. Consequently, she and the aforementioned higher-graded male comparator did not actually perform the same job duties.

Here, the Agency finds, based on an analysis of actual job content reflected in the record, that Complainant has failed to establish a prima facie case of discrimination under the EPA. The preponderance of the evidence supports a finding that Complainant's job was not "equal work" to that of the male comparator within the meaning of the Act. Although at times there may have been some overlap between Complainant's job duties and those of the higher-grade male comparator, there was enough disparity in their actual work to preclude a finding that the jobs were substantially equal. Courts have determined that actual job performance is relevant to a determination of whether work is "substantially equal." Specifically, "(t)he consideration of equal pay standards is based on actual job requirements and performance, not on job classifications or titles." Horner v. Mary Institute, 613 F.2d at 714, quoting Peltier v. City of Fargo, 533 F.2d 374, 377 (8th Cir. 1976).

Given the Complainant's testimony that following the redistribution of COR/ER duties that she was not performing the same duties as the male comparator, we have no choice but to find that she failed to make a prima facie case of discrimination under the EPA. She was not performing the same work as her comparator.

## Conclusion

The weight of the evidence indicates that discrimination did not occur with respect to the issues raised in this complaint. Accordingly, no relief or corrective action is warranted or ordered in this matter.

## APPEAL RIGHTS

The following are the only rights available to challenge this decision:

## APPEAL TO THE EEOC

A Notice of Appeal may be filed with the EEOC within thirty (30) calendar days after receipt of this final decision. EEOC Form 573, Notice of Appeal/Petition, should be used in filing the appeal, as well as what is being appealed should be indicated in the form. A copy of EEOC Form 573 is provided with this decision. Such notice should be addressed to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, DC 20036**

As an alternative to mailing, your appeal may be hand-delivered to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**1801 L Street, N.W.**
**Washington, DC 20507**

As an alternative, you may also send your appeal by fax to the Office of Federal Operations at **(202) 663-7022.**

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

At the same time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there must be a service certification that a copy of the submission has been submitted to the USDA/Employment Adjudication Division and the date and method of service. A copy of the appeal and any submissions in support thereof shall be forwarded to the agency at the following address:

**Department of Agriculture**
**Office of Civil Rights**
**Employment Adjudication Division**
**1400 Independence Avenue, S.W. - Mail Stop 9440**
**Washington, DC 20250-9440**